# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| GREAT AMERICAN OPPORTUNITIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. _____ ) |
| CHERRY BROS., LLC d/b/a CHERRYDALE FARMS, MELISSA DOUTHIT, | ) ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

Plaintiff Great American Opportunities, Inc. ("Great American") states as follows for its complaint against Defendants Cherry Bros., LLC, d/b/a Cherrydale Farms ("Cherrydale") and Melissa Douthit ("Douthit"):

## SUMMARY OF CASE

1. Great American and Cherrydale are competitors in the fundraising industry. Douthit is a former sales representative of Great American and is employed in a similar sales position with Cherrydale.

2. During her employment with Great American, Douthit signed an Employment Agreement that includes restrictive covenants not to compete against Great American and not to solicit Great American's customers within a certain geographical area for a limited time after her employment with the company ends.

3. Douthit breached her Employment Agreement by competing against Great American and soliciting Great American's customers within her former territories on behalf of Cherrydale.

4. Cherrydale was aware of Douthit's Employment Agreement with Great American and the restrictive covenants contained in that agreement. Despite that knowledge, Cherrydale hired Douthit and induced her to breach her Employment Agreement with Great American.

5. Defendants' actions have caused Great American to suffer damages.

## THE PARTIES

6. Great American is a corporation duly organized under the laws of the State of Tennessee and has its principal place of business located at 2451 Atrium Way, Nashville, Tennessee.

7. Cherrydale is a limited liability company organized under the laws of the State of Delaware and has its principal place of business located at 146 Montgomery Avenue, Bala Cynwyd, Pennsylvania. Cherrydale's registered agent may be served at Registered Office Service Company, 203 NE Front Street, Suite 101, Milford, Delaware 19963. Upon information and belief, none of Cherrydale's members are residents of the State of Tennessee.

8. Upon information and belief, Douthit resides in Canton, Georgia. Upon information and belief, Douthit is currently employed by Cherrydale as a Regional Sales Manager.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this matter because the amount in controversy exceeds $75,000 and is between citizens of different states.

10. This Court has personal jurisdiction over Defendants because they have transacted business in Tennessee (including in Nashville), engaged in the wrongful acts alleged herein in Tennessee, and/or engaged in the wrongful acts alleged herein outside of Tennessee that have caused Great American to suffer harm within Tennessee.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and (b)(3).

12. Personal jurisdiction and venue are also proper in this Court as to Douthit pursuant to the forum selection clause set forth in Douthit's Employment Agreement with Great American, which is attached hereto as Exhibit A. Pursuant to the terms of the agreement, Douthit expressly consented to the exclusive venue and personal jurisdiction of the state and federal courts situated in Nashville, Davidson County, Tennessee relative to any action brought by and between the parties in connection with the Employment Agreement.

## FACTUAL BACKGROUND

**A.     Great American**

13. Great American was founded in 1975 and is part of the Southwestern family of companies which has roots stemming back over 165 years and includes the oldest direct selling company in America.

14. Great American is engaged in the highly competitive business of fundraising. In particular, Great American partners with schools and other organizations throughout the United States to promote and add value to their fundraising programs by way of Great American's sales representatives and by way of Great American's role as a wholesaler of products.

15. Great American is the nation's leader in providing fundraising solutions and runs approximately 25,000 fundraising programs each year for approximately 16,000 different accounts.

B. **Douthit's Employment with Great American**

16. Douthit was employed by Great American from on or about January 22, 2012 to on or about February 29, 2016, when she voluntarily resigned.

17. Douthit worked for Great American as a sales representative and was tasked with exercising her best efforts to promote and solicit the maximum number of sales of products and services offered by Great American in fundraising and to service Great American's accounts in furtherance of achieving goals set by Great American.

18. At the start of her employment, Douthit was required to execute Great American's Employment Agreement that was in effect at the time, a true and correct copy of which is attached hereto as Exhibit A ("Employment Agreement").

19. In Section 5(b) of the Employment Agreement, Douthit agreed that for a period of 18 months following the end of her employment, she would not, directly or indirectly:

> [S]olicit or engage in the solicitation of any customer, account, or sponsor of the Company involved in fundraising with respect to whom, at any time during the three (3) years preceding the termination of Employee's employment with the Company with or without cause: (i) Employee performed services on behalf of the Company; (ii) Employee solicited to do business in fundraising; and/or (iii) Employee acquired or had access to any Confidential Information relating to such customer, account or sponsor as a result of Employee's employment with the Company.

20. In Section 5(d) of the Employment Agreement, Douthit further agreed that for a period of 18 months following the termination of her employment, she would not, directly or indirectly:

> [E]ngage in competitive business activity with the Company in connection with fundraising for schools and civic organizations in the counties of the states of the continental United States which contain Territory assigned to and/or sold in by Employee for the Company, in an executive, sales, marketing, and/or business development capacity, for Employee's own business enterprise or for the commercial benefit of any third party, to the fullest extent allowed by applicable law.

21. In Section 4(b) of the Employment Agreement, Douthit agreed to the confidential nature of the information that was provided to her in the course of her employment, and she agreed to safeguard the confidentiality of that information.

22. Section 4(a) of the Employment Agreement defines "confidential and proprietary" as including:

> [W]ithout limitation, lists and particularized information relative to business and marketing plans; costs, margins, pay plans, and other internal financial items; sponsors, customers, and vendors/suppliers; sales reps and other personnel; systems and the administration thereof; and, special know-how, trade secrets and other property interests of the Company, its parent and related entities . . . ."

23. Section 14 of the Employment Agreement provides that the contract would be interpreted and enforced in accordance with the laws of the State of Tennessee.

24. During her employment with Great American, Douthit was assigned a sales territory within the State of Georgia in which she carried out sales and fundraising activities for Great American. The sales territory included, but was not limited to, the following counties in Georgia: Bartow, Cherokee, Cobb, Fannin, Forsyth, Fulton, Gwinnett, and Pickens Counties.

25. In the territory she was assigned and serviced, Douthit was the "face of Great American" and was the primary point of contact with Great American's accounts, fundraising program sponsors, program participating parents and students, associated parent organizations, and members of their communities.

26. During her employment, Douthit was provided access to and was entrusted with Great American's confidential and proprietary information, including, but not limited to, compilations of Great American's customer information.

27. During her employment, Great American paid Douthit a considerable amount of compensation in the form of salary, commissions, and business allowances. Douthit also received significant benefits through her participation in, among other things, the following Great American offerings: employee health insurance, life insurance, 401k and Profit Sharing Plan, incentive trips, awards, and paid vacation.

C.  **Douthit's Employment with Cherrydale**

28. Upon information and belief, Douthit became employed by Cherrydale in or around February 2017 as a "Regional Sales Manager".

29. Upon information and belief, in her position at Cherrydale and before the restrictive covenants in her Employment Agreement expired, Douthit managed other Cherrydale sales representatives in, among other places, those portions of Georgia that Douthit previously serviced on behalf of Great American, which is a violation of her Employment Agreement.

30. Upon information and belief, in her position at Cherrydale and before the restrictive covenants in her Employment Agreement expired, Douthit was assigned a sales territory which includes the territories Douthit previously serviced on behalf of Great American, which also is a violation of her Employment Agreement.

31. Upon information and belief, in her position at Cherrydale and before the restrictive covenants in her Employment Agreement expired, Douthit directly or indirectly solicited Great American's customers and potential customers in her former Great American territory, which is also a violation of her Employment Agreement.

32. Upon information and belief, in her position at Cherrydale and before the restrictive covenants in her Employment Agreement expired, Douthit directly or indirectly contracted for sales and services with customers in her former Great American territory on behalf of Cherrydale, which is also a violation of her Employment Agreement. Upon information and belief, in an effort to conceal and cover-up her violations, Douthit post-dated some or all of the contracts to a date that was after the restrictive covenants in her Employment Agreement expired.

33. Upon information and belief, Cherrydale was aware of Douthit's Employment Agreement with Great American and the restrictive covenants contained in

that agreement. Upon information and belief, Cherrydale still hired Douthit, assigned her to manage and sell in her former Great American territories, and encouraged, induced, aided, assisted, and participated in Douthit's acts of breaching her Employment Agreement with Great American.

## COUNT I
### (Breach of Contract against Douthit)

34. The foregoing paragraphs are hereby incorporated by reference.

35. The Employment Agreement between Great American and Douthit is a valid and enforceable contract.

36. The Employment Agreement between Great American and Douthit serves Great American's interest in protecting its legitimate business interests.

37. Douthit has breached the Employment Agreement by, among other things, directly or indirectly competing against Great American in her former Great American territory, directly or indirectly soliciting and selling to customers in her former Great American territory, and managing and supervising other Cherrydale sales representatives in her former Great American territory.

38. As a direct and proximate result of Douthit's breaches of the Employment Agreement, Great American has suffered damages in an amount to be proven at trial.

## COUNT III
### (Procurement of Breach of Contract against Cherrydale Pursuant to Tenn. Code Ann. § 47-50-109)

39. The foregoing paragraphs are hereby incorporated by reference.

40. Upon information and belief, Cherrydale was aware of the Employment Agreement between Great American and Douthit.

41. Upon information and belief, Cherrydale intended to and did induce Douthit's breaches as described herein and acted maliciously in doing so.

42. Upon information and belief, Cherrydale encouraged, aided, assisted, and participated in Douthit's acts of breaching her Employment Agreement as described herein.

43. As a direct and proximate result of Cherrydale's conduct, Great American has suffered monetary damages in an amount to be proven at trial.

## COUNT III
### (Tortious Interference with Contract against Cherrydale)

44. The foregoing paragraphs are hereby incorporated by reference.

45. Great American had a contractual and economic relationships with Douthit. Upon information and belief, at all relevant times, Cherrydale was fully aware of that relationship.

46. Cherrydale wrongfully interfered with Great American's contractual relationship with Douthit by inducing and encouraging Douthit to breach her contractual obligations to Great American, knowing that doing so would benefit Cherrydale at Great American's expense.

47. As a direct and proximate result of Cherrydale's conduct, Great American has suffered monetary damages in an amount to be proven at trial.

# COUNT IV
## (Tortious Interference with Business Relationships against All Defendants)

48. The foregoing paragraphs are hereby incorporated by reference.

49. Defendants were aware, or should have been aware, of the existence of ongoing business relationships between Great American and its customers and prospective customers in the territories that Douthit serviced on behalf of Great American.

50. Great American has business expectancies with its customers and prospective customers, upon which it reasonably expects to profit.

51. Defendants knew of these actual and prospective contractual relationships and other business expectancies between Great American and its customers and prospects, as well as the actual and anticipated profits associated therewith.

52. Defendants have wrongfully, improperly and maliciously interfered with these actual and anticipated contractual relationships and other business expectancies to aid, assist, and encourage customers and prospects of Great American to refrain from doing business with it.

53. Defendants' wrongful, improper, and malicious interference with these actual and anticipated contractual relationships and other business expectancies has caused and will continue to cause harm to Great American's business. Such harm includes, but is not limited to, Great American's loss of customers and prospects and business relationships and good will.

# PRAYER FOR RELIEF

WHEREFORE, Great American requests that it be granted the following relief as to Defendants, and each of them:

(1) awarding judgment an amount to be proven at trial on all claims asserted;

(2) all actual, consequential, special, liquidated, treble, and exemplary damages as may be provided by law or contract;

(3) its costs and reasonable attorneys' fees as provided under the Employment Agreements, 18 U.S.C. §§ 1836 (b) and/or other applicable law;

(4) prejudgment, post judgment and other interest as permitted by law; and

(5) such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/Michael R. O'Neill
Samuel P. Funk (No. 19777)
Michael R. O'Neill (No. (#34982)
Mark W. Lenihan (No. 36286)
SIMS|FUNK, PLC
3322 West End Avenue, Suite 200
Nashville, Tennessee 37203
(615) 292-9335
(615) 649-8565 (fax)
sfunk@simsfunk.com
moneill@simsfunk.com
mlenihan@simsfunk.com

*Counsel for Plaintiff Great American Opportunities, Inc.*